UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x

In re:

GRL LLC,

        Debtor.

------------------------------------------------------------x

**Hearing Date: March 7, 2012; 2:00 p.m.**

Case No: 1:11-47911-cec

Chapter 11

**APPLICATION IN SUPPORT OF ORDER GRANTING DISMISSAL OF THE DEBTOR'S CASE, OR ALTERNATIVELY, GRANTING RELIEF FROM AUTOMATIC STAY**

Archer Capital Fund, L.P., ("**Archer"**), respectfully submits this application (the "**Application**") for the entry of an Order dismissing the above-captioned chapter 11 case of the debtor, GRL LLC (the "**Debtor**"), or alternatively, granting Archer relief from the automatic stay, and waiving the fourteen (14) day stay. In support of this Motion, Archer respectfully states as follows:

## PRELIMINARY STATEMENT

1.      The Debtor's chapter 11 case was clearly commenced in bad faith and solely for the purpose of preventing Archer, the Debtor's sole pre-petition secured creditor, from exercising its right to foreclose on a mortgage secured by real property of the Debtor's estate pursuant to a state court order directing the foreclosure sale scheduled to occur on the same morning the Debtor filed its petition.

2.      The Debtor has no intention (or ability) to reorganize, but rather simply seeks to prevent Archer from exercising rights which derive from agreements related to prepetition loans made to, and fully utilized by the Debtor, and also from a Judgment of Foreclosure (as defined below). The Debtor has, by its own admission, failed to generate any income in 2009, 2010,

2011. In addition, the Debtor apparently has no employees, and only one unsecured creditor holding a claim in the amount of $50,000, who has been identified as insider, Emmanuel Lambrakis. Thus, as its core, this Chapter 11 case is a two-party dispute between the Debtor and Archer – a dispute that was recently resolved in favor of Archer by the issuance of the Foreclosure Order (as defined below).

3. The improper motive of the Debtor in commencing this case is further confirmed by the fact that (other than filing proof of insurance and a copy of a sur-reply used in the related and dismissed case of In re Eagle Realty, LLC filed under Case No. 1:11-47909-cec), the Debtor has made no filings, not even an application to retain counsel, since the filing of the petition on September 16, 2011.

4. Furthermore, the Debtor failed to provide documentation necessary to be examined at the first scheduled Meeting of Creditors on October 24, 2011, requiring an adjournment, and thereafter failed to appear altogether at the second Meeting of Creditors scheduled for December 21, 2011.

5. Accordingly, for the reasons set forth below, Archer respectfully requests that this Court enter an Order dismissing the Debtor's case, or alternatively granting relief from the automatic stay, and waiving the fourteen (14) day stay, to permit Archer to schedule a foreclosure sale.

## JURISDICTION

6. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 & 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

7. The statutory predicates for the relief requested herein are 11 U.S.C. §§ 361, 362(d)(1) and 1112 of Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"), and Rules 1017, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Rules").

## BACKGROUND

### The Nature Of Archer's Secured Claim

8. According to the Debtor's amended schedules, Archer is the Debtor's sole pre-petition secured creditor. Pursuant the March 22, 2011 Oath and Report of Amount Due ("**Oath**") of Referee Leslie S. Nizin, Esq. ("**Nizin**"), Archer holds a claim in the amount of $2,406,528.93. A copy of the Oath is annexed hereto as **Exhibit "L"**. As indicated by the Archer Affidavit, as of January 18, 2012, interest has accumulated in the amount of $339,902.64, for an aggregate claim of $2,746,431.57. Archer's claim is secured against the real property of the Debtor's estate, based on a note and mortgage described in detail below. Moreover, Archer holds a judgment in its favor entitling it to foreclose on a mortgage secured by assets of the Debtor's estate.

### The Debtor And Related Parties

9. On September 16, 2011, the Debtor filed a voluntary petition for Chapter 11 relief in the United States Bankruptcy Court for the Eastern District of New York under Case No. 1:11-47911-cec. On November 8, 2011, the Debtor filed an amended petition and complete set of schedules (the "**GRL Amended Petition**"). Although no corporate resolution was ever filed, the GRL Amended Petition appears to identify George Lambrakis to be the sole and managing member of the Debtor, with 100% ownership.

10. The GRL Amended Petition indicates that the Debtor is a New York limited liability company operating through its offices in New York City, with a principal place of business at 175-61 Hillside Avenue, Jamaica, New York 11432. The GRL Amended Petition further indicates that the Debtor owns real property in Queens, New York, commonly known as 3276/3278 31st Street, Astoria, New York (Block 587, Lot 68) (the "**GRL Property**"). The GRL Property consists of single story building currently used a medical office by Emmanuel Lambrakis.

11. As explained more fully below, the loan made to the Debtor by Archer was collateralized against the GRL Property, and was further collateralized against the real properties of two other related entities, GEL LLC ("**GEL**"),[1] and Eagle Realty LLC ("**Eagle**").[2] At the time the Loan was made, GRL, GEL and Eagle were believed to be owned and operated by a combination of members of the Lambrakis family, including George Lambrakis and/or his two brothers Gregory Lambrakis and Alexander Lambrakis.

12. Upon information and belief, GEL is a New York limited liability company operating through its offices in New York City, with a principal place of business at 175-61 Hillside Avenue, Jamaica, New York 11432. GEL owns real property in Queens, New York, commonly known as 29-08 Hoyt Avenue South, Astoria, New York, and 29-10 Hoyt Avenue

---

[1] On September 16, 2011, GEL filed a voluntary petition for Chapter 11 relief in the United States Bankruptcy Court for the Eastern District of New York under Case No. 1:11-47910-cec. On November 8, 2011, GEL filed a petition and schedules amending the September 16, 2011 petition, the "**GEL Amended Petition**". Although no corporate resolution was ever filed in that case, the GEL Amended Petition identifies Gregory Lambrakis to be the managing member of the single member LLC that is GEL.

[2] On September 16, 2011, Eagle filed a voluntary petition for Chapter 11 relief in the United States Bankruptcy Court for the Eastern District of New York under Case No. 1:11-47909-cec. On November 8, 2011, Eagle filed a petition and schedules amending the September 16, 2011 petition, the "**Eagle Amended Petition**". Although no corporate resolution was ever filed in that case, the Eagle Amended Petition identifies George Lambrakis to be managing member of the single member of Eagle possessing a one-third interest in Eagle, and that Gregory Lambrakis and Alexander Lambrakis each hold the other one-third interest in Eagle. The Eagle case was dismissed pursuant to the Order of this Court on December 23, 2011, which prohibits Eagle from filing any future petitions under any provision of the Bankruptcy Code.

South, Astoria, New York (Block 838, Lots 3 and 4 respectively)(the "**GEL Property**"). Upon information and belief, George Lambrakis is the sole and managing member of GRL.

13. Upon information and belief, Eagle is a New York limited liability company operating through its offices in New York City, with a principal place of business at 175-61 Hillside Avenue, Jamaica, New York 11432. Upon information and belief, Eagle owns real property in Queens, New York, commonly known as 178-02/178-18 Hillside Avenue, Jamaica, New York, 178-20/178-36 Hillside Avenue, Jamaica, New York and 88-10/88-16 179th Street, Jamaica, New York (Block 9913, Lots 25, 35, and 41 respectively[3])(the "**Eagle Property**", together with the GEL Property and the GRL Property collectively referred to herein as the "**Properties**"). Pursuant to the Amended Schedules filed by Eagle on November 8, 2011, George Lambrakis alleges to be the managing member[4] of Eagle pursuant to his interest in Eagle, while Gregory Lambrakis and Alexander Lambrakis each similarly hold interests in Eagle.

14. As discussed more fully below, both GEL and Eagle duly executed and delivered to Archer, mortgages further encumbering the Properties in exchange for a loan given by Archer to the Debtor.

**The GEL/GRL Loan, Note and Mortgage**

15. On or about March 8, 2007, Archer made a second loan (the "**GEL/GRL Loan**") to the Debtor, and GEL, in the principal sum of $2,600,000.00. The purpose of the GEL/GRL Loan was designed to refinance the existing defaulted debt, and to fund additional costs related

---

[3] On or about August 15, 2011, one or more parcels which make up the Eagle property may have been erroneously transferred to Transylvania Realty, LLC by Referee's Deed via foreclosure sale upon a mechanics lien. Correcting the transfer of the parcels that make up the Eagle Property is the subject of an ongoing litigation.

[4] By Memorandum, Decision and Order dated September 13, 2010, ACF Hillside, L.L.C. ("ACF Hillside"), acceded George Lambrakis as Managing Member of Eagle Realty, L.L.C., in the case captioned <u>ACF Hillside, L.L.C. v. George Lambrakis</u> Index No. 27393-08.

to the Properties. The GEL/GRL Loan was evidenced by a Consolidated Secured Promissory Note dated March 8, 2007 (the "**GEL/GRL Note**"), which was executed and delivered by the Debtor and GEL to Archer in the principal sum of $2,600,000.00. A copy of the GEL/GRL Note is annexed hereto as **Exhibit "A"**.

16. As security for the Debtor and GEL's obligations under the GEL/GRL Note, including, without limitation, the repayment of the GEL/GRL Loan, a Mortgage Consolidation and Extension Agreement, Assignment of Leases and Rents and Security Agreement (the "**GEL/GRL Mortgage**") dated March 8, 2007 was duly executed and by the Debtor, GEL and Eagle, and delivered to Archer, further encumbering the Properties. The GEL/GRL Mortgage was duly recorded in Register's Office on March 23, 2007 under CRFN 2007000152638. A copy of the GEL/GRL Mortgage is annexed hereto as **Exhibit "B"**.

17. As further security for the Debtor's obligations under the GEL/GRL Note, an Assignment of Leases and Rents to Additionally Secure $2,600,000.00 Consolidated Secured Promissory Note, dated March 8, 2007 (the "**AL&R**") was executed by the Debtor, GEL and Eagle and delivered to Archer. The AL&R was duly recorded in the Register's Office on March 23, 2007 as CRFN 2007000152639. A copy of the AL&R is annexed hereto as **Exhibit "C"**.

18. To further secure the Debtor's obligations under the GEL/GRL Note, on March 8, 2007, Eagle, George Lambrakis, Gregory Lambrakis and Emmanuel Lambrakis[5] (the "**GRL Guarantors**") duly executed and delivered a Guarantee to Archer (the "**GRL Guarantee**" and

---

5 On November 9, 2011, in support of Eagle's Opposition to Archer's Motion to Dismiss that case, Emmanuel Lambrakis filed the *Affidavit of Dr. Emmanuel Lambrakis in opposition to the Motion to dismiss* dated November 4, 2011, which indicated, *inter alia*, that he is the father of Gregory Lambrak is, George Lambrakis, and Alexander Lambrakis.

together with the GEL/GRL Note, GEL/GRL Mortgage, AL&R, and GEL Guarantee the "**Loan Documents**"). A copy of the GRL Guarantee is annexed hereto as **Exhibit "D"**.

19. Pursuant to paragraph 2 of the GEL/GRL Note, captioned *Payments*, the Debtor promised to repay the GEL/GRL Loan by making payments of principal and interest "commencing May 1, 2007, and on the first day of each and every month thereafter, through and including April 1, 2008" (the "**Maturity Date**") calculated on the actual number of days elapsed over a 360 day year, at which time the Debtor was required to pay all of the outstanding balance of the principal, together with accrued and unpaid interest and any other amounts due and payable. See paragraph 2 of GEL/GRL Note, annexed hereto as **Exhibit "A"**.

20. Pursuant to paragraph 4.1 of the GEL/GRL Note and paragraph 21 of the GEL/GRL Mortgage, similarly captioned *Events of Default*, the failure to make any payment when due, including the failure to repay the debt on or before the Maturity date constitutes an Event of Default. See paragraph 4.1 of GEL/GRL Note and paragraph 21 of the GEL/GRL Mortgage annexed hereto as **Exhibit "A"** and **Exhibit "B"** respectively.

21. Paragraph 4.4 of GEL/GRL Note, and paragraph 22 of the GEL/GRL Mortgage further provide, among other things, that upon maturity, the outstanding principal amount of the Loan, together with all accrued interest and all other sums secured by the Loan Documents, shall be immediately due and payable, and all other sums secured by the Loan Documents, shall be immediately due and payable, and all unpaid amounts shall accrue interest at a rate equal to twenty-four (24%) interest per annum (the "**Default Rate**"). See paragraph 4.4 of GEL/GRL Note and paragraph 22 of the GEL/GRL Mortgage annexed hereto as **Exhibit "A"** and **Exhibit "B"** respectively.

22.     Paragraph 24 of GEL/GRL Mortgage further provides, among other things, that in the event of a default, Archer may commence an action to foreclose the rights of the Debtor in the GEL Property, the GRL Property, and the Eagle Property. The GEL/GRL Mortgage further provides, among other things, that in any action to foreclose, Archer is entitled, without notice and without regard to the adequacy of the security for the debt, to the appointment of a receiver. See paragraph 24 of GEL/GRL Mortgage, annexed hereto as **Exhibit "B"**.

23.     The AL&R provides, among other things, that in the event of a default, the Debtor shall pay to Archer any rents received from the Properties. See paragraphs 2, 4 and 6 of the AL&R, annexed hereto as **Exhibit "C"**.

**Defaults Under The Loan Documents**

24.     The Debtor failed to comply with the terms and conditions of the GEL/GRL Note and GEL/GRL Mortgage by failing to make payment of all sums due on the Maturity Date (the "**Default**"). On or about October 13, 2008, Archer's counsel transmitted a letter duly demanding the Debtor make payment of the entire unpaid balance of the Loan (the "**Notice of Default**"). However, despite such demand, the Debtor refused or otherwise failed to make full payment by the Maturity Date. A copy of the Notice of Default is annexed hereto as **Exhibit "E"**.

**Archer Obtained Judgment In Its Favor**
**Entitling It To Foreclose On The GEL/GRL Mortgage**

25.     Pursuant to the Default and the Debtor's failure to cure same, on or about November 10, 2008, Archer commenced an action to foreclose on the GEL/GRL Mortgage (the "**Foreclosure Action**") in the Supreme Court of the State of New York, Queens County under Index No. 27397/08 against the Debtor, GRL, Eagle, the GEL Guarantors, and other defendants with an interest in the Properties (if any).

26. On or about October 25, 2010, an Order Granting Summary Judgment and Other Relief and Appointing Referee to Compute (the "**SJ Order**"), was entered in the Foreclosure Action. Pursuant to the SJ Order, Nizin was appointed as Referee, and accordingly prepared an Oath. Pursuant to Nizin's Oath, a sum of $2,406,528.93 was due Archer, plus per diem interest every day thereafter. A copy of the SJ Order is annexed hereto as **Exhibit "F"**.

27. On or about August 5, 2011, Archer's Motion for Judgment of Foreclosure and Sale (the "**Foreclosure Order**") was granted in the Foreclosure Action, and in connection therewith, a foreclosure sale was scheduled for September 16, 2011 (the "**Original Sale Date**"). A copy of the Foreclosure Order and Notice of Entry is annexed hereto as **Exhibit "G"**.

**The Receiver**

28. On or about August 26, 2010, Archer filed an *ex parte* motion in the Foreclosure Action for an Order appointing a Temporary Receiver to manage the Properties based upon both the express terms of the Mortgage[6] and New York Real Property Law ("**RPL**") § 254(10).[7]

29. By Order Appointing Temporary Receiver in a Foreclosure Action, dated August 23, 2010 (the "**Receiver Order**"), Justice Augustus C. Agate appointed the Gary C. DiLeonardo, Esq. (the "**Receiver**") as temporary receiver. A copy of the Receiver Order is annexed hereto as **Exhibit "H"**.

---

6 Paragraph 24 of the Mortgage provides in part, "Upon the occurrence of any Event of Default, Mortgagee may take such action, without notice or demand, as it deems advisable to protect and enforce its rights against Mortgagor and in and to the Mortgaged Property . . . (vii) apply for the appointment of a trustee, receiver, liquidator or conservator of the Mortgaged Property, without notice and without regard for the adequacy of the security for the Debt and without regard for the solvency of the Mortgagor, or any Guarantor or any person, firm or other entity liable for the payment of the debt."

7 RPL § 254(10) captioned *Mortgagee entitled to appointment of receiver* provides: A covenant "that the holder of this mortgage, in any action to foreclose it, shall be entitled to the appointment of a receiver," must be construed as meaning that the mortgagee, his heirs, successors or assigns, in any action to foreclose the mortgage, shall be entitled, without notice and without regard to adequacy of any security of the debt, to the appointment of a receiver of the rents and profits of the premises covered by the mortgage; and the rents and profits in the event of any default or defaults in paying the principal, interest, taxes, water rents, assessments or premiums of insurance, are assigned to the holder of the mortgage as further security for the payment of the indebtedness."

**The Debtor's Petition**

30. On September 16, 2011 (the "**Petition Date**"), the day of the scheduled foreclosure sale, the Debtor filed its voluntary petition (the "**Petition**") for relief under Chapter 11 of the Bankruptcy Code. Thereafter, on November 8, 2011, the Debtor filed an amended petition which included a completely revised set of schedules (the "**Amended Petition**"). A copy of the Amended Petition is annexed hereto as **Exhibit "I"**. According to the Amended Petition, the Debtor possesses assets in the amount of $900,500.00, and liabilities in the amount of $50,000.00. The Amended Petition differs from the Petition in that it indicates that the Debtor is no longer a Single Asset Real Estate entity, although nothing in the GRL Amended Petition would suggest that the Debtor is not a single asset real estate entity. See the Debtor's Amended Petition at page 1 annexed hereto as **Exhibit "I"**.

31. The Amended Petition lists the value of the GRL Property as unknown. Archer is listed as the creditor holding the claim secured against the value of the GRL Property. In fact, other than the unsecured obligation owed to insider Emmanuel Lambrakis in the sum of $50,000, Archer is listed as the sole secured creditor of the Debtor's estate.

32. Besides the unsecured claim of Emmanuel Lambrakis, the Debtor failed to list any other unsecured creditors on its Amended Schedule F.

33. According to the Petition, the Debtor failed to generate any income during the two (2) years prior to the Petition Date, and similarly failed to indicate that the Debtor generated any income prior to the time the Receiver was appointed. The Petition also appears to confirm that the Debtor has no employees.

34. Finally, the Debtor has not filed any documents subsequent to the Petition Date

(other than a proof of insurance and a cookie cutter Response to Archer's Motion to Dismiss previously submitted in exactly the same form in a different case), including any application to retain counsel, all demonstrating the Debtor's desire to delay and hinder Archer's its rights under the Foreclosure Order.

**The GRL Property**

35.    As indicated by the Affirmation of Gary C. DiLeonardo, Esq. (the "**Receiver's Affirmation**") dated January 6, 2012, and corroborated by the Lender Affidavit, Emmanuel Lambrakis is the current tenant at the GRL Property, and is the subject of a landlord tenant proceeding for the non-payment of rents to the Receiver.  As a result, Emmanuel Lambrakis continues to operate his business from the GRL Property rent free, at the expense of Archer.

36.    In addition, Archer has received notice that as of December 26, 2011, insurance on the GRL Property lapsed.  A copy of the Notice of Cancellation of Insurance (the "**Insurance Cancellation Notice**"), indicating that insurance on the GRL Property has lapsed is annexed hereto as **Exhibit "J"**.

**Property Taxes**

37.    On January 4, 2012, counsel for Archer contacted the Queens County taxing authority to learn that the Debtor currently owes the New York City Department of Finance ("**NYCDOF**") and XSpand (a third party purchaser of delinquent real estate taxes) taxes, penalties and fees in excess of $51,798.82 on the GRL Property, $17,702.57 of which was incurred post-petition.  Copies of the outstanding property tax amounts as owed to both NYCDOF and XSpand is annexed hereto as **Exhibit "K"**.

38. Not surprisingly, the Debtor failed to identify or provide for treatment of NYCDOF or XSpand's claims in its GRL Amended Petition.

## THE APPLICATION

39. Archer requests that this honorable Court grant an Order dismissing the Debtor's case pursuant to 11 U.S.C. § 1112, or in the alternative pursuant to 11 U.S.C. § 362(d)(1), waiving the fourteen (14) day stay imposed by Rule 4001, (iii) for such further and different relief as the Court may deem just and proper.

## RESERVATION OF RIGHTS

40. Archer expressly reserves their right to amend or supplement this Motion, to introduce evidence supporting this Motion at the hearing on the Motion, and to file additional and supplemental objections as Archer deems advisable.

## NOTICE

41. Notice of this Motion has been provided to the Office of the United States Trustee, counsel to the Debtor, and those parties entitled to notice in this chapter 11 case. In light of the nature of the relief requested, Archer submits that no other or further notices need be provided.

42. An application to dismiss the Debtor's case for cause pursuant to 11 U.S.C. § 707(A) & 28 U.S.C. § 1654 was previously made before this Court on September 24, 2011 (the "**First Motion to Dismiss**"). At that time, the Debtor, a limited liability corporation, filed a petition seeking Chapter 11 bankruptcy relief *pro se*. Upon learning that the Debtor retained counsel at the November, 9, 2011 hearing on the First Motion to Dismiss, Archer made an oral application to withdraw the First Motion to Dismiss which was granted.

**WHEREFORE**, Archer respectfully request that this Court enter an Order dismissing the Debtor's case pursuant to 11 U.S.C. § 1112, or in the alternative pursuant to 11 U.S.C. § 362(d)(1), waiving the fourteen (14) day stay imposed by Rule 4001, and for such further and different relief as the Court may deem just and proper.

Dated: New York, New York
January 18, 2011

        KRISS & FEUERSTEIN LLP

        *s/ Jerold C. Feuerstein*
        Jerold C. Feuerstein (JF9829)
        360 Lexington Avenue
        Suite 1200
        New York, New York 10017
        (212) 661-2900

        *Attorneys for Archer Capital Fund, L.P.*