UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------x

In re:

GRL LLC,

                                    Debtor.

-----------------------------------------------------------------------x

**Hearing Date: March 7, 2012 at 2:00 p.m.**

**MEMORANDUM OF LAW IN SUPPORT OF ORDER DISMISSING THE DEBTOR'S CASE, OR ALTERNATIVELY, FOR RELIEF FROM THE AUTOMATIC STAY**

Chapter 11

Case No. 1:11-47911-cec

Hon. Carla E. Craig
United States Bankruptcy Judge

JEROLD C. FEUERSTEIN, ESQ.
KRISS & FEUERSTEIN, LLP
*Attorneys for Archer Capital Fund, L.P.*
360 Lexington Avenue, Suite 1200
New York, New York 10017
(212) 661-2900

## BACKGROUND[1]

The relevant facts and particulars are set forth in the Affidavit of Joel R. Fogel (the "**Lender Affidavit**"), an authorized person operating on behalf of Archer Capital Fund, L.P. ("**Archer**"), and the Application in Support of Jerold C. Feuerstein, Esq. (the "**Application in Support**") as submitted herewith and as otherwise set forth herein.

## PRELIMINARY STATEMENT

The Debtor's only asset is the GRL Property, and the Petition identifies Archer as the Debtor's only secured and non-insider creditor, with Emmanuel Lambrakis, as the Debtor's only other creditor, holding an unsecured claim in a relatively small amount. The Debtor's sole asset, the GRL Property, was the subject of the Foreclosure Action as a result of the Debtor's Default on the debts underlying the GEL/GRL Mortgage. Consequently, the Debtor's case is nothing more than a two-party dispute between the Debtor and Archer, which can be resolved through enforcement of the Foreclosure Order. The Debtor admittedly has no cash flow, and is, and has been, unable to meet any of its current expenses. Archer has been provided with evidence to demonstrate that the Debtor has permitted insurance on the GRL Property to lapse. Finally, the Debtor has no employees, and the time of the commencement of this case clearly evidences the intent to frustrate the legitimate efforts of Archer to enforce its rights under the Foreclosure Order.

---

[1] Capitalized terms used herein but not otherwise defined shall have the same meanings given to them as set forth in the Lender Affidavit and the Application in Support (as defined herein).

## ARGUMENT

**I.        The Debtor's Chapter 11 Case Should Be Dismissed For Cause**

11 U.S.C. § 1112(b) of the Bankruptcy Code provides that the court (absent unusual circumstances) shall dismiss a chapter 11 case upon a showing of cause by a party in interest.[2] While "cause" is not specifically defined, § 1112(b)(4) of the Bankruptcy Code sets forth a non-exclusive list of sixteen examples of cause for dismissal, including a "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation." 11 U.S.C. § 1112(b)(4)(A); *see In re Gen. Growth Props., Inc.*, 409 B.R. 43, 55 (Bankr. S.D.N.Y. 2009); *see also In re Adler*, 329 B.R. 406, 409 (Bankr. S.D.N.Y, 2005); *Quarles v. U.S. Trustee*, 194 B.R. 94, 96 (W.D. Va. 1996) ("[t]he factors in § 1112(b) [of the Bankruptcy Code] are non-exclusive, and a bankruptcy court may consider additional grounds in determining "cause"').

### A.        The Debtor Filed This Chapter 11 Case In Bad Faith

Filing a petition in bad faith provides the requisite "cause" under § 1112(b) of the Bankruptcy Code to dismiss a chapter 11 case. *See C-TC 9th Ave. P'ship v. Norton Co. (In re C-TC 9th Ave. P'ship)*, 113 F.3d 1304, 1309 (2d Cir. 1997) ("[w]hen it is clear that, from the date of filing, the debtor has no reasonable probability of emerging from the bankruptcy proceedings and no realistic chance of reorganizing, then the Chapter 11 petition may be frivolous"); *see also Baker v. Latham Sparrowbush Assocs.* (*In re Cohoes Indus. Terminal, Inc.*), 931 F.2d 222 (2d Cir. 1991).

---

[2] "[O]n request of a party in interest, and after notice and a hearing, absent unusual circumstances specifically identified by the court that establish that the requested . . . dismissal is not in the best interests of the creditors and the estate, the court shall . . . dismiss a case under this chapter . . . if the movant establishes cause." 11 U.S.C. § 1112(b) (emphasis added).

The Second Circuit applies a two-prong test to determine whether to dismiss a case: "if both objective futility of the reorganization process and subjective bad faith in filing the petition are found." *In re Kingston Square Assocs.,* 214 B.R. 713, 725 (Bankr. S.D.N.Y. 1997). To satisfy the objective prong, "the movant must demonstrate the objective futility of the reorganization process such that at the time of filing there was no reasonable probability that [the debtor] would eventually emerge from bankruptcy proceedings." *Squires Motel, LLC v. Gance*, 426 B.R. 29, 34 (Bankr. N.D.N.Y. 2010). To establish subjective bad faith, "the movant must show that there was no reasonable likelihood that the debtor intended to reorganize." *Id*. (internal quotes omitted).

In determining whether bad faith exists, courts consider all the surrounding facts of the case, employing a "totality of the circumstances" test, rather than any single factor. *See In re Kingston Square Assocs.*, 214 B.R. 713, 725 (Bankr. S.D.N.Y. 1997); *In re Fraternal Composite Servs., Inc.*, 315 B.R. 247, 249 (Bankr. N.D.N.Y. 2003). Although analyzing whether a chapter 11 was filed in bad faith requires a "highly factual determination," it is also "one that may sweep broadly." *In re C-TC 9th Ave. P'ship*, 113 F.3d at 1312.

In *In re C-TC 9th Ave. P'ship*, the court outlined the following factors to consider as particularly indicative of a bad faith filing:

> (1) the debtor has only one asset; (2) the debtor has few unsecured creditors whose claims are small in relation to those of the secured creditors; (3) the debtor's one asset is the subject of a foreclosure action as a result of arrearages or default on the debt; (4) the debtor's financial condition is, in essence, a two party dispute between the debtor and secured creditors which can be resolved in the pending state foreclosure action; (5) the timing of the debtor's filing evidences an intent to delay or frustrate the legitimate efforts of the debtor's secured creditors to enforce their rights; (6) the debtor has little or no cash flow; (7) the debtor can't meet current

> expenses including the payment of personal property and real estate taxes; and (8) the debtor has no employees.

113 F.3d at 13 11; *see also Squires Motel, LLC* v. *Gance,* 426 B.R. 29, 35 (N.D.N.Y. 2010); *In re Phoenix Piccadilly, LTD.,* 849 F.2d 1393, 1394-95 (11th Cir. 1988). Consideration of these factors confirms that this case was commenced in bad faith, and should be dismissed.

As set forth above, the Debtor's one asset is the GRL Property, and the GRL Amended Petition identifies only one unsecured creditor, insider Emmanuel Lambrakis, who holds a claim in a relatively small amount in relation to Archer's claim. The Debtor's sole asset, the GRL Property, was the subject of the Foreclosure Action as a result of the Debtor's default on the debts underlying the GEL/GRL Mortgage. Consequently, the Debtor's case is nothing more than a two party dispute between the Debtor and Archer, which can be resolved through enforcement of the Foreclosure Order. The Debtor has failed to demonstrate it has any cash flow, and as a result, is unable to meet current expenses. Finally, the Debtor has failed to identify that it has any employees, that it has properly maintained insurance on the GRL Property, and the timing of the commencement of this case clearly evidences intent to frustrate the legitimate efforts of Archer to enforce their rights under the Foreclosure Order as the case was commenced on the same day as the foreclosure sale.

As stated by the court in *In re HBA East, Inc.,* 87 B.R. 248 (Bankr. E.D.N.Y. 1988):

> Chapter 11 petitions filed for the purpose of frustrating the legitimate processes of a non-bankruptcy forum constitute use of the reorganization vehicle inconsistent with the congressional intent. Chapter 11 relief should not be available to entities filing to obtain a perceived advantage in litigation with others or to provide an alternative judicial forum . . .

*Id.* at 260; *see also in re 698 Flushing Realty Corp.*, 335 B.R. 17, 21 (Bankr. E.D.N.Y. 2005)

("This case is the very essence of a bad faith filing-commenced in an efforts to gain an upper hand in state court litigation, with a demonstrable absence of any possibility of confirming a chapter 11 plan"); *In re Cedar Shore Resort, Inc.*, 235 F.3d 375 (8th Cir. 2000) ("Debtors seeking the protections of the Code should act in conformity with the Code's underlying principles of equity and fairness, and any debtor who files bankruptcy in bad faith should not be permitted to enjoy the protections of Chapter 11, even though the debtor might be capable of effectuating a reorganization"); 7 Collier on Bankruptcy at 1112-68 ("[a]nother basic underpinning of the good faith doctrine is the equitable concept of 'clean hands.' As a general matter, bankruptcy relief is equitable in nature, and, as a general rule, equitable remedies are not available to any party who fails to act in an equitable fashion").

Although the GRL Amended Petition differs from the Petition originally filed by the Debtor with respect to classifying the Debtor as a Single Asset Real Estate entity ("**SARE**") as defined pursuant to 11 U.S.C. § 101(51B), there are no factual differences in the GRL Amended Petition to support the Debtor not being classified as SARE. The only logical conclusion to be derived by this amendment is that the Debtor became wise to the more stringent deadlines imposed on a SARE debtor, and attempted to avoid such deadlines.

In addition, the improper motives of the Debtor in commencing this case are further confirmed by the fact that (other than filing proof of insurance and a copy of a sur-reply used in the related and dismissed case of In re Eagle Realty, LLC filed under Case No. 1:11-47909-cec), the Debtor has made no filings, not even an application to retain counsel, since the filing of the petition on September 16, 2011. Moreover, the Debtor failed to provide documentation necessary to be examined at the first scheduled Meeting of Creditors on October 24, 2011,

requiring an adjournment, and thereafter failed to appear altogether at the second Meeting of Creditors scheduled for December 21, 2011. Finally, the Debtor failed to comply with the Court's directive in that the Debtor maintain insurance on the GRL Property, posing a risk to the estate.

More importantly, Archer has recently become aware that as of December 26, 2011, the Debtor has let the insurance on the GRL Property lapse. This is especially important in light of the extensive damage sustained by the GEL Property. Damage to the GRL Property, similar to that found in the GEL Property, would undoubtedly reduce the value of the Debtor's estate as well as the value of Archer's collateral.

The Debtor's chapter 11 case will continue to cause loss to the Debtor's estate until it is dismissed. For example, as a result of this chapter 11 filing, the Debtor is subject to all of the costs, expenses and risks associated with a bankruptcy proceeding, including statutorily imposed U.S. Trustee's fees, and, if approved, the fees and expenses incurred by the Debtor's professionals, including Karamvir Dahiya, Esq., and any other professionals retained by any official committee of unsecured creditors, should such unsecured creditors be discovered. *See* 28 U.S.C. § 1930(a)(6); 11 U.S.C. § 330.

There is no benefit to the Debtor's creditors by this filing. Rather, as set forth above, this case was filed at the behest of the Debtor solely in an effort to prevent Archer's from foreclosing on the GEL/GRL Mortgage, and seeking to obtain an advantage in that regard.

Based in the foregoing, Archer respectfully submits that the Debtor never really intended to reorganize, and as a result, ample cause exists for the entry of an Order dismissing the Debtor's chapter 11 case as a bad faith filing.

## II.     Alternatively, Archer Is Entitled To Relief From The Automatic Stay

Alternatively, cause exists under § 362(d)(1) of the Bankruptcy Code to grant Archer relief from the automatic stay to enforce the Foreclosure Order, because Archer is not, and cannot be adequately protected, and/or the Debtor is unable to reorganize in chapter 11.[3]

### A. Archer Is Entitled To Relief From The Automatic Stay Based Upon The Debtor's Bad Faith Filing

The list of grounds for granting relief from the automatic stay under § 362(d)(1) of the Bankruptcy Code is illustrative rather than exhaustive. *See In re Éclair Bakery LTD.,* 255 B.R. 121, 137 (Bankr. S.D.N.Y. 2000). Moreover, it is well-settled that "cause" for relief from the automatic stay may be based on a bad faith filing. *Id.* at 137-38. In addition, courts granting relief from the automatic stay for cause on the grounds of a bad faith filing consider the same factors as those considered for dismissal enumerated in *In re C-TC 9th Ave. P'ship. See in re 234-6 West 22nd St. Corp.,* 214 *B.R.* 751 (Bankr. S.D.N.Y. 1997) ("in the context of a motion either to dismiss a chapter 11 case under § 1112(b) or to lift the stay under § 362(d)(1) the standards for bad faith as evidence of cause are not substantively different from each other . . . .") (internal citations omitted); *see also In re Laguna Assocs. Ltd. Partnership,* 30 F.3d 734 (6th Cir. 1994). Thus, a finding that a Petition filed in bad faith is sufficient grounds for granting relief from the automatic stay.

---

[3] § 362(d) of the Bankruptcy Code provides in pertinent part for relief from the automatic stay under § 362(a) of the Bankruptcy Code, as follows:

> On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay-
> (1) for cause, including the lack of adequate protection of an interest in property of such party in interest;

11 U.S.C. § 362(d)(1) (emphasis added).

Accordingly, Archer is entitled to relief from the automatic stay for the same reasons that warrant the dismissal of the Debtor's Chapter 11 case, as set forth above.

### B. Relief From Stay Should Be Granted Pursuant To 11 U.S.C. § 362(d)(1) As The Debtor Has Not And Cannot Provide Archer With Adequate Protection

In addition, relief from the automatic stay should be granted for lack of adequate protection of Archer's perfected security interest in the GRL Property, as well as its interest in the leases and rents under the terms of the AL&R. Indeed, the most common basis for granting relief from the automatic stay for "cause" is a debtor's failure to provide adequate protection of a secured creditor's interest in its security. 3 Collier on Bankruptcy ¶ 362.07. While the list in § 362(d)(1) of the Bankruptcy Code is not exhaustive, the Bankruptcy Code explicitly included "lack of adequate protection" as constituting sufficient "cause" for granting relief from the automatic stay. See *In re Éclair Bakery LTD*., 255 B.R. 121, 137 (Bankr. S.D.N.Y. 2000).

The requirement to provide adequate protection is mandatory;[4] a secured creditor is entitled to adequate protection - as a matter of right, not merely as a matter of discretion - when it is stayed from enforcing its interest, when the estate proposes to use, sell or lease property in which it has an interest. *See Metromedia Fiber Network Servs. v. Lexent, Inc*. (*In re Metromedia Fiber Network, Inc*.), 290 B.R. 487, 491 (Bankr. S.D.N.Y. 2003) ("§ 363(e) is not permissive or discretionary - it states that the court 'shall' grant the relief specified, at any time, on the request of secured entity"). Consequently, if a debtor cannot demonstrate that a secured creditor's interest in collateral is adequately protected despite the debtor's continuing use of the collateral, the debtor cannot use the collateral. *See* 3 Collier on Bankruptcy, ¶ 363.05[2].

---

[4] § 363(e) of the Bankruptcy Code provides that "the court, with or without a hearing, shall prohibit or condition such use, sale, release *as is necessary* to provide adequate protection of such interest." 11 U.S.C. § 363(e) (emphasis added).

In this regard, adequate protection is "recognized as a fundamental right afforded secured creditors in bankruptcy proceedings." *In re Waste Conversion Techs., Inc.*, 205 B.R. 1004, 1007 (D. Conn. 1997). The purpose of adequate protection "is to insure that a secured creditor receives the value for which the creditor bargained for prior to the debtor's bankruptcy." *In re WorldCom, Inc.*, 304 B.R. 611, 618-19 (Bankr. S.D.N.Y. 2004) (citations omitted). The Bankruptcy Code "deliberately protects and preserves the interests of secured creditors in property in which they have a security interest, and accordingly takes the concept of adequate protection very seriously." *Harvis Trien & Beck, P. C. v. Fed. Home Loan Mortgage Corp. (In re Blackwood Assocs., L.P.)*, 153 F.3d 61, 68 (2d Cir. 1998).

In requiring debtors to provide secured creditors with adequate protection, the Bankruptcy Code was concerned with compensating secured creditors for the decrease in value of their interest in the collateral. *See In re 495 Central Park Avenue Corp*., 136 B.R. 626, 631 (Bankr. S.D.N.Y. 1992) ("the goal of adequate protection is to safeguard the secured creditors from diminution in the value of its interests during Chapter 11 reorganization"). Thus, adequate protection "must not be illusory and, particularly in the context of the use of cash collateral, must be of the most indubitable equivalence." *In re Goode*, 235 B.R. 584, 590 (Bankr. E.D. Tex 1999); *see also In re Waste Conversion Technologies, Inc*., 205 B.R. 1004, 1007 (D. Conn. 1997).

Finally, it is well-settled that the Debtor bears the burden of proof in proposing an adequate protection package to provide more than mere speculation regarding the protections being offered and must premise their relief on facts or projections that have evidentiary support. *See, e.g., In re Mosello*, 195 B.R. 277, 292 (Bankr. S.D.N.Y. 1996) (finding insufficient evidence

of adequate protection based on debtors projection of future transactions); *In re First South Savings Association*, 820 F.2d 700, 712 (5th Cir. 1987) (Court of Appeals rejected the debtors' proposed post-petition financing where "[t]he numbers (i.e., value, income) offered by those called by the debtor to testify were...based on assumptions that are not supported in the record"); *In re Wieseler*, 45 B.R. 871, 876 (D.S.C. 1985) (rejecting debtor's proffer of a replacement lien in future crops, finding that the debtor "must go beyond simply estimating what they hope they can harvest and what they hope the market will bring for it").

Here, Archer is neither receiving, nor received, any protection much less adequate protection, and as a result, Archer bears a significant and unreasonable risk that the value of its collateral, the GRL Property, will continue to significantly decline during the pendency of the Debtor's chapter 11 case. Moreover, based on the Debtor's lack of any cash flow, and mounting tax burden, the Debtor cannot provide the adequate protection to which Archer is entitled.

In addition, as set forth above, Archer holds an interest in any leases held and rents paid by the tenant of the GRL Property under the AL&R. Any funds collected by the Debtor from prospective tenants constitute cash collateral, pursuant to section 363(a) of the Bankruptcy Code, in which Archer has an interest. Provided Emmanuel Lambrakis began to pay rent to the Debtor, or upon his eviction, a new tenant leased the GRL Property, the Debtor has nevertheless, failed to file any motion seeking the right to use such cash collateral. Accordingly, "cause" exists to lift the automatic stay to allow Archer to enforce the Foreclosure Order.

### C. The Debtor Failed To Disclose Essential Information Regarding Property Taxes Owed To NYSDOF And XSpand In The GRL Amended Petition

On January 4, 2012, counsel for Archer contacted the NYSDOF and learned that the Debtor currently owes NYSDOF and XSpand unpaid real estate taxes, penalties and fees from

January 2010 to present, an amount in excess of $47,062.41 on the GRL Property. Not surprisingly, the GRL Amended Petition, identified neither NYSDOF nor XSpand as creditors. The Debtor's further misrepresentations, miscalculations, or lack of diligence with respect to the actual outstanding real property taxes owed can only be attributed to the Debtor's bad faith effort to further mislead creditors, Archer, and this Court.

Accordingly, grounds exist to grant Archer's request for relief from the automatic stay to pursue its remedies granted under the Foreclosure Order.

THE REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK

## **CONCLUSION**

For the foregoing reasons, Archer respectfully request that this Court enter an Order dismissing the Debtor's chapter 11 case, or, alternatively, lifting the automatic stay to permit Archer to enforce the Foreclosure Order, and for such other relief as may be just and proper.

Dated: New York, New York
       January 18, 2012                        KRISS & FEUERSTEIN LLP

                                            *s/ Jerold C. Feuerstein*
                                            Jerold C. Feuerstein (JF9829)
                                            360 Lexington Avenue
                                            Suite 1200
                                            New York, New York 10017
                                            (212) 661-2900

                                            *Attorneys for Archer Capital Fund, L.P.*